**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **LAKE CHEROKEE HARD DRIVE TECHNOLOGIES, LLC,**<br><br>　　　　**Plaintiff,**<br><br>　**vs.**<br><br>**MEDIATEK USA INC., MEDIATEK INC., DELL INC., HEWLETT-PACKARD COMPANY, LENOVO (UNITED STATES) INC., LITE-ON SALES AND DISTRIBUTION INC., PHILIPS & LITE-ON DIGITAL SOLUTIONS USA, INC., SAMSUNG ELECTRONICS AMERICA, INC., TOSHIBA SAMSUNG STORAGE TECHNOLOGY CORPORATION, TOSHIBA SAMSUNG STORAGE TECHNOLOGY KOREA CORPORATION,**<br><br>**Defendants.** | Case No. 2:13-cv-00563-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS DELL INC., HEWLETT PACKARD COMPANY, AND**
**LENOVO (UNITED STATES) INC.'S MOTION TO STAY PROCEEDINGS**

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION........................................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................................... 1

    A.      This Litigation Is In Its Infancy ........................................................................ 1

    B.      Lake Cherokee Alleges Infringement By The MediaTek Customers And
        The Downstream Customers Based On MediaTek's Allegedly Infringing
        Chips. ................................................................................................................ 2

    C.      The Downstream Customers Purchase Optical Disk Drives With Pre-
        Installed MediaTek Chips And Have No Direct Relationship With
        MediaTek. .......................................................................................................... 3

III.    LEGAL STANDARDS ............................................................................................... 4

IV.     ARGUMENT ............................................................................................................... 6

    A.      The Case Against The Downstream Customer Defendants Should Be
        Stayed................................................................................................................. 6

        1.      A stay will not unduly prejudice or disadvantage Lake Cherokee ........... 6

        2.      A stay will simplify the issues in this case ............................................... 7

        3.      The early stage of the litigation favors a stay of the claims against
                the Downstream Customers ..................................................................... 9

    B.      The Principles Underlying The Customer Suit Exception Also Favor A
        Stay Of Proceedings Against The Downstream Customer Defendants............... 10

        1.      The Downstream Customers are mere resellers....................................... 10

        2.      The Downstream Customers will be bound by any decision
                resolving issues between Lake Cherokee and MediaTek with
                respect to the MediaTek chips ............................................................... 11

        3.      MediaTek is the only source of the allegedly infringing product........... 12

    C.      Alternatively, The Court Should Exercise Its Discretion To Order A Case
        Management Plan That Furthers Judicial Economy And Efficiency................... 12

V.      CONCLUSION ......................................................................................................... 13

<u>**TABLE OF AUTHORITIES**</u>

**PAGE**

**FEDERAL COURT CASES**

*Amado v. Microsoft Corp.,*
    517 F. 3d 1353 (Fed. Cir. 2008) ........................................................................... 13

*Anascape, Ltd. v. Microsoft Corp.,*
    475 F. Supp. 2d 612 (E.D. Tex. 2007) .................................................................... 7

*Card Activation Techs. v. Pier 1 Imps., Inc.,*
    No. 09-cv-2021, 2009 WL 2956926 (N.D. Ill. Sept. 14, 2009) ........................... 8, 9

*Commissariat A L'Energie Atomique v. Dell Computer Corp.,*
    No. 03-484, 2004 U.S. Dist. LEXIS 9107 (D. Del. May 13, 2004) ........................ 8

*Corry v. CFM Majestic, Inc.,*
    16 F. Supp. 2d 660 (E.D. Va. 1998) ....................................................................... 4

*Elecs. for Imaging, Inc. v. Coyle,*
    394 F.3d 1341 (Fed. Cir. 2005) ............................................................................... 5

*Eon-Net LP v. Flagstar Bancorp,*
    653 F.3d 1314 (Fed. Cir. 2011) ............................................................................... 7

*Glenayre Elecs., Inc. v. Jackson,*
    443 F.3d 851 (Fed. Cir. 2006) ................................................................................. 8

*Gould v. Control Laser Corp.,*
    705 F.2d 1340 (Fed. Cir. 1983) ............................................................................... 4

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.,*
    Nos. 04-cv-1337, 1338, 2005 WL 2465898 (D. Del. May 18, 2005) ............... 5, 6, 8

*In re Papst Licensing GmbH & Co. KG Litig.,*
    767 F. Supp. 2d 1 (D.D.C. 2011) ......................................................................... 5, 7

*Kahn v. Gen. Motors Corp.,*
    889 F.2d 1078 (Fed. Cir. 1989) ............................................................................... 5

*Katz v. Lear Siegler, Inc.,*
    909 F.2d 1459 (Fed. Cir. 1990) ............................................................................... 4

*Keranos, LLC v. Analog Devices, Inc.* and *Samsung Elecs. Co., Ltd. v. Keranos, LLC,*
    Nos. 2:10-cv-207 and 2:11-cv-331 (E.D. Tex. Jan. 10, 2013) ............................. 12

*Koh v. Microtek Int'l, Inc.,*
    250 F. Supp. 2d 627 (E.D. Va. Mar. 5, 2003) ...................................................... 11

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936) ................................................................................................ 4

*Lonestar Inventions L.P. v. Sony Elec. Inc.,*
  No. 6:10-cv-588, 2011 WL 3880550 (E.D. Tex. Aug. 29, 2011) ......................................... 10

*MGT Gaming, Inc. v. WMS Gaming, Inc.,*
  No. 3:12-cv-741, 2013 WL 5755247 (S.D. Miss. Oct. 23, 2013) ...................................... 6, 9

*MicroLinc, LLC v. Intel Corp.,*
  No. 2:07-CV-488-TJW, 2010 WL 3766655 (E.D. Tex. Sept. 20, 2010) ................................ 7

*Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.,*
  Nos. 6:06-cv-549, 550, 2007 WL 4376104 (E.D. Tex. 2007) ............................................. 10

*Mobil Oil Corp. v. W.R. Grace & Co.,*
  334 F. Supp. 117 (S.D. Tex. 1971) ..................................................................................... 11

*Pragmatus Telecom, LLC v. Advanced Store Co.,*
  No. 12-088-RGA, 2012 WL 2803695 (D. Del. July 10, 2012) ........................................... 12

*Shifferaw v. Emson USA,*
  No. 2:09-cv-54-TJW-CE, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ............... 5, 6, 8, 11

*Southwire Co. v. Cerro Wire, Inc.,*
  750 F. Supp. 2d 775 (E.D. Tex. 2010) ................................................................................... 9

*Soverain Software LLC v. Amazon, Inc.,*
  356 F. Supp. 2d 660 (E.D. Tex. 2005) ................................................................................... 4

*Spread Spectrum Screening LLC v. Eastman Kodak Co.,*
  657 F.3d 1349 (Fed. Cir. 2011) ............................................................................................. 9

*Tegic Commc'n Corp. v. Bd. of Regents of Univ. of Tex. Sys.,*
  458 F.3d 1335 (Fed. Cir. 2006) .......................................................................................... 5, 8

*Toshiba Corp. v. Hynix Semiconductor, Inc.,*
  No. 3:04-cv-2391, 2005 WL 2415960 (N.D. Tex. Sept. 30, 2005) ....................................... 7

*Wyndham Assoc. v. Bintliff,*
  398 F.2d 614 (2nd Cir. 1968) ................................................................................................. 4

I.      INTRODUCTION

Plaintiff Lake Cherokee Hard Drive Technologies, LLC ("Lake Cherokee") joined ten defendants in this case, but its infringement allegations are directed only at chips made by defendants MediaTek USA Inc. and MediaTek Inc. (collectively "MediaTek").  MediaTek's accused chips are subsequently purchased and installed in optical drives by other defendants. The three Moving Defendants— Dell Inc. ("Dell"), Hewlett-Packard Company ("HP"), and Lenovo (United States) Inc. ("Lenovo")—are two steps removed from the allegedly infringing conduct.  They purchase the already assembled optical disk drives and have no visibility into the design or manufacture of the allegedly infringing chips or the drives containing those chips.  A stay of Lake Cherokee's peripheral claims against the Moving Defendants would materially advance the economical administration of justice, will not unduly prejudice Lake Cherokee, and will simplify major issues in this litigation, which is still in its infancy.  The principles underlying the customer suit exception also favor a stay because the Moving Defendants are mere resellers of MediaTek's accused technology.  In order to promote judicial efficiency and avoid imposing needless burden and expense on the Moving Defendants, all proceedings against them should be stayed pending resolution of Lake Cherokee's claims against MediaTek.

II.     FACTUAL BACKGROUND

A.      This Litigation Is In Its Infancy.

In this case, Lake Cherokee alleges infringement of two patents, United States Patent Nos. 5,991,911 and 6,048,090 (the "patents-in-suit"), both of which are directed to a system for error correction when reading from a disk storage medium.  Lake Cherokee asserts the patents-in-suit against defendants in three separate categories: (1) chip supplier MediaTek; (2) several suppliers of optical disk drives that allegedly incorporate MediaTek chips (collectively, the

"MediaTek Customers")[1]; and (3) three downstream customers—Dell, HP, and Lenovo[2]—who are alleged to incorporate optical disk drives containing the MediaTek chips into their products (collectively, the "Downstream Customers").  Lake Cherokee filed its original complaint on July 23, 2013, and an amended complaint on September 9, 2013.  The Court recently set a *Markman* hearing for July 31, 2014, and jury selection for March 9, 2015.  Discovery has just begun.

**B.    Lake Cherokee Alleges Infringement By The MediaTek Customers And The Downstream Customers Based On MediaTek's Allegedly Infringing Chips.**

Lake Cherokee alleges that "[t]he MediaTek defendants' infringing products include, without limitation, chips used in optical disk drives."  (Dkt. 38, ¶¶ 19, 56.)  Lake Cherokee accuses MediaTek of direct infringement by "placing its infringing chips in the stream of Commerce knowing its customers" would make, use, sell, and import "products containing the chips."  (*Id.*, ¶¶ 20, 57.)  With respect to the MediaTek Customers, Lake Cherokee alleges infringement based on "infringing chips" supplied by MediaTek:  "[MediaTek Customer's] infringing products include, without limitation, optical disk drive products that include chips obtained from the MediaTek defendants."  (*See id.*, ¶¶ 39, 76 (Lite-On); *id.*, ¶¶ 49, 86 (Toshiba Samsung entities).)  That identical allegation is repeated against all three of the Downstream Customers:  "[Downstream Customer's] infringing products include, without limitation, optical disk drive products that include chips obtained from the MediaTek defendants."  (*See id.*, ¶¶ 24, 61 (Dell); *id.*, ¶¶ 29, 66 (HP); *id.*, ¶¶ 34, 71 (Lenovo).)

---

[1] The MediaTek Customers are believed to include at least Defendants Lite-On Sales and Distribution Inc. and Philips & Lite-On Digital Solutions USA (collectively "Lite-On"); and Toshiba Samsung Storage Technology Corporation and Toshiba Samsung Storage Technology Korea Corporation (collectively "Toshiba Samsung entities").  The Toshiba Samsung entities have not been served in this case.  Based on Lake Cherokee's infringement allegations and contentions, the appropriate classification of Defendant Samsung Electronics America, Inc. is unclear at present.

[2] Lake Cherokee's claims against Lenovo Group Limited were dismissed without prejudice on September 23, 2013.  (Dkt. 48.)

On January 17, 2014, Lake Cherokee served its infringement contentions pursuant to Patent Local Rule 3-1.  (Declaration of Roderick M. Thompson ("Thompson Decl."), ¶ 2.)[3]  The "Accused Instrumentalities" identified by Lake Cherokee include various MediaTek chips and optical drives supplied by the MediaTek Customers.  (*Id.*, Ex. A at 2–12.)  Significantly, Lake Cherokee has not accused a single Downstream Customers' product of infringing the patents-in-suits.  Instead, Lake Cherokee alleges infringement based on unspecified "devices" containing the accused MediaTek chips and MediaTek Customers' optical drives.  (*Id.*, Ex. A at 7–12.)

**C.     The Downstream Customers Purchase Optical Disk Drives With Pre-Installed MediaTek Chips And Have No Direct Relationship With MediaTek.**

The Downstream Customers are two steps removed from Lake Cherokee's allegations of infringement based on MediaTek chips.  As noted above, Lake Cherokee's infringement allegations against the Downstream Customers are based solely on MediaTek's chips and the MediaTek Customer's optical disk drives, which in turn contain the allegedly infringing MediaTek chips.  Lake Cherokee has not identified even one computer or other product made or sold by a Downstream Customer.  The Downstream Customers simply purchase the optical disk drives from suppliers, including the MediaTek Customers, without specification of the particular chips therein, and plug them into the computer and other products that they sell to consumers. (*See* Declaration of Meng Chun Tan ("Tan Decl."), ¶¶ 4–7; Declaration of Kevin M. Kilian ("Kilian Decl."), ¶¶ 4–7; Declaration of Kurt Cranor ("Cranor Decl."), ¶¶ 4, 6, 7.)  Consequently, the Downstream Customers have no direct contractual relationship with MediaTek related to the accused chips contained in optical disk drives.  (*See* Tan Decl., ¶ 8; Kilian Decl., ¶ 8; Cranor Decl., ¶ 8.)  Due to their attenuated relationship with MediaTek, the Downstream Customers also

---

[3] On January 22, 2014, Lake Cherokee served a "corrected" version of its infringement contentions, correcting its identification of several defendants.  (*Id.*)

lack any information regarding the manufacture and design of the MediaTek chips contained within the optical disk drive products that the Downstream Customers purchase from their suppliers.  (*See* Tan Decl., ¶ 5; Kilian Decl., ¶ 8; Cranor Decl., ¶ 5.)

## III.   LEGAL STANDARDS

The Court has inherent power to control its own docket, including the power to stay proceedings.  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983); *Soverain Software LLC v. Amazon, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (citations omitted).  The power to stay "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis*, 299 U.S. at 254–55.  Courts should stay "peripheral claims where the 'administration of justice would be materially advanced.'" *Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 665 (E.D. Va. 1998) (quoting *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618–19 (2nd Cir. 1968), *cert denied*, 393 U.S. 977 (1968)).  In determining whether a stay is appropriate, district courts in Texas typically consider three factors: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set."  *Soverain Software*, 356 F. Supp. 2d at 662.

In a patent infringement case, a stay may also be appropriate under the customer suit exception when the "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (citation omitted).  The exception recognizes that "the manufacturer is the true defendant in the customer suit," *id.* (citation omitted), and has

the "greater interest in defending its actions against charges of patent infringement." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (citation omitted).  Staying a patentee's claims against customers pending resolution of its claims against the manufacturer also promotes efficiency and judicial economy by focusing resources on "the party that controls the product's design, rather than … secondary parties such as customers." *In re Papst Licensing GmbH & Co. KG Litig.*, 767 F. Supp. 2d 1, 10 (D.D.C. 2011); *see also Tegic Commc'n Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) ("[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy."); *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, Nos. 04-cv-1337, 1338, 1536, 2005 WL 2465898, at *3 (D. Del. May 18, 2005) (in "the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed").  In determining whether the customer suit exception should apply, courts consider (1) whether the customer is "merely a reseller" of the accused product; (2) whether the customer will be bound by any decision in favor of the patentee; and (3) "whether the manufacturer is the only source" of the allegedly infringing product. *Tegic*, 458 F.3d at 1343.[4]

Although courts generally apply the customer suit exception to stay an earlier-filed case brought by the patentee against a manufacturer's customers while a later-filed case involving the manufacturer proceeds in another forum, the doctrine's principles are equally applicable to stay claims against customer defendants joined in the same lawsuit as the manufacturer.  *See, e.g.*, *In re Papst*, 767 F. Supp. 2d at 10.  In both cases, the infringement claim against the customer is "peripheral" to that against the manufacturer and should be stayed. *Shifferaw v. Emson USA*, No. 2:09-cv-54-TJW-CE, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010) (staying plaintiff's

---

[4] Federal Circuit law controls whether the customer suit exception applies. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005).

claims against customer defendants because they were "only peripherally involved, with their only relevant conduct being the resale of products purchased from [the manufacturer]" and plaintiff "presented no evidence … that the [customers] had any role in the design or manufacture of the accused products"); *Honeywell Int'l Inc.*, 2005 WL 2465898, at *3 (staying litigation as to non-manufacturer defendants except to provide limited discovery regarding the suppliers of the infringing component); *see also MGT Gaming, Inc. v. WMS Gaming, Inc.*, No. 3:12-cv-741, 2013 WL 5755247, at *12 (S.D. Miss. Oct. 23, 2013) ("A patent infringement claim against a retailer, distributor, or customer of infringing products is peripheral to a claim against a manufacturer.").

## IV.    ARGUMENT

### A.    <u>The Case Against The Downstream Customer Defendants Should Be Stayed.</u>

All three of the factors in the traditional stay analysis favor a stay of proceedings as to the Downstream Customer defendants pending resolution of Lake Cherokee's claims against MediaTek.

#### 1.    A stay will not unduly prejudice or disadvantage Lake Cherokee.

A stay of proceedings against the three Downstream Customers would not cause Lake Cherokee any tactical disadvantage or prejudice.  Lake Cherokee does not need any evidence from the "peripheral" Downstream Customers, who are two steps removed from MediaTek, to determine whether the accused MediaTek chips infringe the patents-in-suit.  MediaTek, as the developer of the accused chips, possesses and controls the relevant evidence concerning their design and functionality.  *See Shifferaw*, 2010 WL 1064380, at *3 (severing and staying claims against customers because they were "only peripherally involved, with their only relevant conduct being the resale of products purchased from [the manufacturer]" and plaintiff "presented no evidence … that the Retailer Defendants had any role in the design or manufacture of the

accused products"); *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. 3:04-cv-2391, 2005 WL 2415960 (N.D. Tex. Sept. 30, 2005) (same).  The Downstream Customers have nothing substantive to offer to the infringement analysis.  *See Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007) (finding no undue prejudice where stay would not impact plaintiff's ability to locate and question witnesses regarding infringement).  Indeed, Lake Cherokee's own infringement contentions confirm that its allegations are not directed at the Downstream Customers' products but at the MediaTek chips contained within the optical drives therein.  (Thompson Decl., Ex. A, at 2–12.)

In addition, Lake Cherokee will suffer no prejudice with respect to the availability or sufficiency of relief.  It may obtain the relief to which it is entitled (if any) from MediaTek, and as a non-practicing entity, it may be sufficiently compensated by monetary damages for any harm that may result from delaying resolution of its claims against the Downstream Customers. *MicroLinc, LLC v. Intel Corp.*, No. 2:07-CV-488-TJW, 2010 WL 3766655, at *2 (E.D. Tex. Sept. 20, 2010) (finding that plaintiff would suffer no prejudice where, as here, it does not allege that it "manufacture[s] or sell[s] any products, or otherwise practice[s] the patent, [so] there is no risk of customer losses or injury to market share during a stay"); *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327-28 (Fed. Cir. 2011) ("As a non-practicing entity, [plaintiff] … did not face any business risk resulting from the loss of patent protection over a product or process.").  Therefore, this factor favors a stay of proceedings as to the Downstream Customers.

## 2.    A stay will simplify the issues in this case.

Staying Lake Cherokee's peripheral claims against the Downstream Customers pending resolution of its direct claims against the "true" defendant, MediaTek, would promote efficiency and judicial economy by focusing resources on "the party that controls the product's design, rather than … secondary parties such as customers." *In re Papst*, 767 F. Supp. at 10; *see also*

7

*Tegic*, 458 F.3d at 1343 ("[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy."); *Honeywell*, 2005 WL 2465898, at *3 (In "the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed.").

Lake Cherokee's patent infringement claims against the Downstream Customers are duplicative of its claims against MediaTek.  This is true not only in terms of the evidence needed to address them, as discussed above, but also likely in terms of the appropriate measure of damages if liability is ever established.  Should Lake Cherokee ultimately prevail on its infringement claims against MediaTek and collect damages from MediaTek, the patent exhaustion doctrine would bar Lake Cherokee from recovering duplicative damages from the Downstream Customers for sale of the same infringing chips.  *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864–66 (Fed. Cir. 2006) (holding that a patent owner cannot collect damages from a customer when it has already obtained damages from the manufacturer); *Shifferaw*, 2010 WL 1064380, at *4.

Furthermore, resolving Lake Cherokee's claims against MediaTek, the party that designed the accused chips, will obviate most of the issues between Lake Cherokee and the Downstream Customers, including whether or not the accused chips infringe the patents-in-suit, and the validity and enforceability of the patents-in-suit.  *See, e.g.*, *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. 03-484, 2004 U.S. Dist. LEXIS 9107, at *11 (D. Del. May 13, 2004) ("Because the manufacturers are intimately involved in the design, operation, and use of the accused [products], they are in the best position to contest the validity and infringement of [plaintiff's] asserted patents" and "[r]esolving these issues prior to proceeding against the [manufacturers' customers] would surely simplify this case."); *Card Activation*

*Techs. v. Pier 1 Imps., Inc.*, No. 09-cv-2021, 2009 WL 2956926, at *4 (N.D. Ill. Sept. 14, 2009).

Because Lake Cherokee's infringement allegations against all defendants are based on the

accused MediaTek chips, the Downstream Customers can only be held liable if MediaTek is

found to infringe. *See MGT Gaming*, 2013 WL 5755247, at *13 (staying claims against

customer defendants because they were only "secondarily involved" and "would only incur

liability for using the [accused] products if the Court finds that the manufacturer infringed [the

patent-in-suit]"). Even if any residual issues remain between Lake Cherokee and the

Downstream Customers after the claims against MediaTek are resolved, the number of issues

will be greatly reduced. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349,

1358 (Fed. Cir. 2011) (holding that "the manufacturer's case need only have the potential to

resolve the 'major issues' concerning the claims against the customer—not every issue—in order

to justify a stay of the customer suits"). Thus, this factor weighs in favor of a stay as to the

Downstream Customers.

> **3.      The early stage of the litigation favors a stay of the claims against the
> Downstream Customers.**

This case is in its infancy, with a *Markman* hearing recently scheduled for July 31, 2014,

and jury selection set for March 9, 2015. Discovery has just opened, and no party has noticed

any depositions. A stay at this juncture would prevent needless waste of resources by the parties

and this Court. *See Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 2d 775, 780 (E.D. Tex.

2010) (finding that "it is still early enough in this litigation to warrant a stay—the *Markman*

hearing has not occurred, expert reports have not been exchanged, discovery is not completed,

summary judgment motions have not been filed, and the Court has not begun its claim

construction"). The Court should therefore exercise its discretion to grant a stay of proceedings

as to the Downstream Customers.

**B.     The Principles Underlying The Customer Suit Exception Also Favor A Stay Of Proceedings Against The Downstream Customer Defendants.**

Likewise, all three factors in the customer suit analysis favor a stay of this litigation as to the three "peripheral" Downstream Customers pending resolution of Lake Cherokee's claims against MediaTek.

**1.     The Downstream Customers are mere resellers.**

As discussed above, Lake Cherokee's allegations against the Downstream Customers are based on their alleged sale or importation of products that contain optical disk drives, which in turn contain the accused MediaTek chips.  Lake Cherokee cannot argue that the Downstream Customers directly infringe by *using* the MediaTek chips—they simply purchase optical disk drives that they then plug into their own downstream products for commercial sale.  (*See* Tan Decl., ¶ 4; Kilian Decl., ¶ 4; Cranor Decl., ¶ 4.)  *Cf. Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*, Nos. 6:06-cv-549, 550, 2007 WL 4376104, at *3 (E.D. Tex. 2007) (finding customer suit exception inapplicable where the manufacturer's product was only part of the infringing device and the customer defendant's product was required for the plaintiff to prove direct infringement).

The Downstream Customers do not purchase the accused chips from MediaTek, nor do they have a direct relationship with MediaTek pertaining to the accused chips, let alone any role in the design or manufacture of the accused chips.  (*See* Tan Decl., ¶¶ 4, 5, 6, 8; Kilian Decl., ¶¶ 4, 5, 6, 8; Cranor Decl., ¶¶ 4, 5, 6, 8.)  *Cf. Lonestar Inventions L.P. v. Sony Elec. Inc.*, No. 6:10-cv-588, 2011 WL 3880550 (E.D. Tex. Aug. 29, 2011) (declining to apply customer suit exception when the customer defendant may have been involved in designing and manufacturing the accused circuitry and its name was printed on the face of the accused chip).  The Downstream Customers are two steps removed from MediaTek, connected only as a result of

10

their reseller status.  *See, e.g.*, *Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F. Supp. 117, 123 (S.D. Tex. 1971) (holding that a customer defendant "[b]eing essentially a customer whose sole transgression is the purchase and use of a small percentage of an infringing product, can be and should be classified as a secondary or peripheral defendant").  They should not be subjected to the burden of patent litigation for alleged inventions covering products that they neither design nor manufacture.

> **2.      The Downstream Customers will be bound by any decision resolving issues between Lake Cherokee and MediaTek with respect to the MediaTek chips.**

Any decision resolving the invalidity and infringement issues between Lake Cherokee and the principal defendant, MediaTek, will bind the Downstream Customers in the following respect:  The Downstream Customers "can only be found liable if the patent infringement claims against [MediaTek] are resolved in favor of the plaintiff."  *Shifferaw*, 2010 WL 1064380, at *4. If MediaTek is <u>not</u> found liable (e.g., the patents-in-suit are found not infringed and/or invalid), then Lake Cherokee has no claims against the Downstream Customers.  *See Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627 (E.D. Va. Mar. 5, 2003) (holding that plaintiff had no infringement claim against customers unless it was first able to obtain a ruling that the manufacturer was liable for patent infringement).  If MediaTek is found liable (e.g., the patents-in-suit are infringed and not invalid) and Lake Cherokee collects damages from MediaTek, it cannot then collect damages from the Downstream Customers for their sale of the same chip because that would violate the doctrine of patent exhaustion.  *Intel Corp.*, 995 F.2d at 1568–69. Therefore, should the claims against the Downstream Customers be stayed, any decision with respect to the presently asserted patents and accused MediaTek chips will resolve the case

against the Downstream Customers.[5]

### 3. MediaTek is the only source of the allegedly infringing product.

The infringement allegations in Lake Cherokee's amended complaint and its infringement contentions are directed only to MediaTek chips and optical disk drives that incorporate the MediaTek chips. (Dkt. 38, ¶¶ 24, 29, 34, 39, 44, 49, 61, 66, 71, 76, 81, 86; Thompson Decl., Ex. A, at 2–12.) Lake Cherokee relies on MediaTek's allegedly infringing chips as the defining characteristic of the alleged infringement by all defendants and thus cannot dispute that MediaTek is the only source of the allegedly infringing product. *See Pragmatus Telecom, LLC v. Advanced Store Co.*, No. 12-088-RGA, 2012 WL 2803695, at *4 (D. Del. July 10, 2012) (staying patentee's suit against customer defendants pending resolution of the manufacturer's case because "the [c]ustomers' use of the [manufacturer's] technology [was] central and a 'major issue'" in both actions). Therefore, a stay of all claims against the Downstream Customers pending resolution of the claims against MediaTek is warranted.

### C. Alternatively, The Court Should Exercise Its Discretion To Order A Case Management Plan That Furthers Judicial Economy And Efficiency.

If the Court declines to stay proceedings as to the Downstream Customers, they respectfully request entry of a case management plan that promotes the most efficient resolution of Lake Cherokee's claims against the three groups of defendants in this case. *Keranos, LLC v. Analog Devices, Inc.* and *Samsung Elecs. Co., Ltd. v. Keranos, LLC*, Nos. 2:10-cv-207 and 2:11-cv-331 (E.D. Tex. Jan. 10, 2013) (finding that a stay of three-year-old claims against customer defendants was not warranted and instead ordering staggered schedules, with the manufacturing defendant action proceeding on a more accelerated schedule, "[i]n an effort to conserve judicial

---

[5] To the extent Lake Cherokee asserts new, different, or amended infringement allegations in this or any other suit against the Downstream Customers, the Downstream Customers may seek the Court's leave to defend against those new, different, or amended infringement allegations and to raise such issues as non-infringement, invalidity, and unenforceability.

resources and streamline the issues for trial").  Due to the breadth of their case load, district courts "are afforded broad discretion to control and manage their dockets, including the authority to decide the order in which they hear and decide issues pending before them."  *Id*. (citing *Amado v. Microsoft Corp.*, 517 F. 3d 1353, 1358 (Fed. Cir. 2008)).  Here, given the nature of Lake Cherokee's infringement allegations, a case management plan that requires the claims against MediaTek to proceed on a more accelerated schedule than the claims against the Downstream Customers "would further judicial economy and efficiency."  *Id*.

## V.        CONCLUSION

Downstream Customers Dell, HP, and Lenovo are, at most, peripheral players in this lawsuit.  They respectfully request that this Court stay Lake Cherokee's claims against them pending resolution of its claims against MediaTek and the MediaTek Customers.

Dated:  February 25, 2014                            Respectfully submitted,

/s/ Deron R. Dacus                                  
Deron R. Dacus
(SBN 00790553)
ddacus@dacusfirm.com
THE DACUS FIRM, PC
821 ESE Loop 323
Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 705-1117

Roderick M. Thompson (*pro hac vice*)
rthompson@fbm.com
Allyson F. Deraps (*pro hac vice*)
aderaps@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

**ATTORNEYS FOR DEFENDANT**

**DELL INC.**
*/s/ Taryn Koball Williams*
Scott T. Weingaertner
sweingaertner@kslaw.com
Mark H. Francis
mfrancis@kslaw.com
KING & SPALDING, LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2117
Fax: (212) 556-2222

Taryn Koball Williams (*pro hac vice*)
taryn_williams@kslaw.com
KING & SPALDING, LLP
1700 Pennsylvania Ave, NW, Suite 200
Washington, DC 20006
Tel: (202) 661-7895
Fax: (202) 626-3737

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Patrick C. Clutter
State Bar No. 24036374
patrickclutter@potterminton.com
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

**ATTORNEYS FOR DEFENDANT HEWLETT-PACKARD COMPANY**

*/s/ Fred I. Williams*
Fred I. Williams (*lead attorney*)
Texas State Bar No. 00794855
fwilliams@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
300 West Sixth Street, Suite 1900
Austin, Texas 78701
Telephone: (512) 499-6200
Facsimile: (512) 499-6290

14

Eric J. Klein
Texas State Bar No. 24041258
eklein@akingump.com
Kellie M. Johnson
Texas State Bar No. 24070003
kmjohnson@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone:  (214) 969-2800
Facsimile:   (214) 969-4343

**ATTORNEYS FOR DEFENDANT
LENOVO (UNITED STATES) INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 25th day of February 2014, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).  Any other counsel of record will be served by a facsimile transmission and/or first class mail.

*/s/ Deron R. Dacus*
DERON R. DACUS

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned certifies compliance with the meet and confer requirement in Local Rule CV-7(h).  The personal conferences required by Local Rule CV-7(h) were conducted as follows: (1) via telephone conference on December 6, 2013, with Christin Cho for Lake Cherokee Technologies, LLC and Rod Thompson for Dell Inc. followed by an exchange of emails on December 9, 2013; (2) via telephone conference on February 25, 2014, with Christin Cho for Lake Cherokee Technologies, LLC and Taryn Williams for Hewett Packard Company; and (3) via telephone conference on February 25, 2014, with Christin Cho for Lake Cherokee Technologies, LLC and Kellie Johnson for Lenovo (United States) Inc.  No agreement could be reached because counsel for Lake Cherokee indicated that it opposes this motion.  Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Rod Thompson*
ROD THOMPSON

16